UNITED STATES, Appellee

v.

WILLIAM A. L. McKNIGHT, Private First Class, United States Marine Corps, Appellant

4 USCMA 190, 15 CMR 190

No. 3363

Decided April 23, 1954

MAJ Francis C. Foley, Jr., USMCR, and CDR Robert W. Collins, USNR, for Appellant.

CAPT Wesley C. Blake, USMC, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by special court-martial for the offense of failure to obey a lawful order in violation of Article 92, Uniform Code of Military Justice, 50 USC § 686. The specification charging the offense alleged that he, having knowledge of a lawful order issued by Major John M. Barclay, United States Marine Corps, to muster with the duty noncommissioned officer on November 11, 1952, failed to obey the same. He entered a plea of guilty to the charge and specification and persisted in his plea after being advised that he could be found guilty without further proof of the offense, and that conviction would subject him to a sentence which could include a bad-conduct discharge, confinement at hard labor for six months, and forfeiture of two-thirds' pay per month for six months. No evidence was submitted on the merits by either prosecution or defense, but after the finding of guilty had been announced, prosecution offered in evidence two pages from accused's service record showing that he had been convicted of two previous offenses. Extract copies certified to be true were substituted and made a part of the record. Thereafter, defense counsel read an unsworn statement of the accused in which he stated that his failure to muster for duty was occasioned by personal difficulties which caused him to go absent without leave on November 11, 1952. At the conclusion of this statement, defense counsel said that while accused admitted his guilt, he had not realized the serious nature of the offense at the time it was committed.

After a short closing of the court, the president reopened it and made the following statement:

"The court, upon reviewing the statement of the accused in matters of mitigation and extenuation regarding the offense of which the accused stands convicted, feels that Article 92 of the Uniform Code of Military Justice has still been violated, but that the sentence in this particular case, in accordance with Footnote 5 of the Table of Maximum Punishments, brings the maximum punishment within that set forth under Article 86, Uniform Code of Military Justice, under failing to go to appointed place of duty. In view of the preceding, it is incumbent upon the court to vacate that maximum punishment which could be adjudged for the offense as stated in the president of the court's warning to the accused upon entry of his plea of guilty, and to warn the accused of the new maximum punishment which could be adjudged for the offense as it now stands, which maximum punishment is: a bad conduct discharge, confinement at hard labor for three months, and forfeiture of two-thirds of your pay per month for a like period, two previous convictions considered."

The court-martial thereafter imposed a sentence of a bad-conduct discharge, forfeiture of $55.00 per month for three months, confinement at hard labor for the same period, and reduction to the rank of private. The convening authority approved the findings and the sentence after reducing the forfeitures to $35.00 per month for three months. The supervisory authority suspended execution of the bad-conduct discharge until release from confinement or completion of appellate review, whichever is the later date, but otherwise approved the findings and sentence. The board of review affirmed, and we granted accused's petition for review to consider the admissibility of an extract copy from the accused's service record showing a previous conviction.

There is one preliminary matter which warrants our consideration prior to our disposition of the question of the admissibility of the exhibit. The accused presented matters which, in the opinion of the president of the court-martial, invoked the limitation on the maximum sentence authorized under Article 92, supra, by footnote 5 to the Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951. Accordingly, he reduced the maximum punishment to that provided for failure to go to the appointed place of duty proscribed by Article 86, 50 USC § 680. Footnote 5, supra, is as follows:

"The punishment for this offense [Article 92] does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

Neither the Code nor the Manual contains a specific provision authorizing the invocation of the provisions of footnote 5 by the medium of an unsworn statement. The submission of that type of statement by the accused in mitigation is permitted by paragraph 75c(2) of the Manual, but it is expressly provided that it is not evidence and the accused cannot be subjected to cross-examination. While such statements would be useless if no recognition were given to their effectiveness, it is difficult to find a justification for using them to change the issues or the law applicable to a given case. Paragraph 70a of the Manual requires that where the accused, after a plea of guilty, sets up matters inconsistent with such a plea, a plea of not guilty should be entered and the case proceed to be tried on its merits. Assuming the story related by the accused could be used for that purpose, the version presented by him was not inconsistent with his original plea, and it must stand. The most that can be claimed for the statement is that it can be considered in extenuation or mitigation of the sentence for the offense found committed. The president of the court-martial accepted the unsworn statement as a credible explanation of the accused's action and, while he did not consider it sufficient to require a withdrawal of the guilty plea, he concluded it established an offense punishable by

the penalty provided for by Article 86 and not Article 92. We have some difficulty in following his legal reasoning as there is no testimony to show the nature of the order, whether personal or otherwise, and the gravamen of the offense. See United States v. Buckmiller, 1 USCMA 504, 4 CMR 96. However, it may be that the members of the court who were officers of the unit may have been able to determine from the allegations of the specification the date and time of reporting, the nature of the order described, the officer involved, and whether they were considering a routine assignment or a direct and personal order. The accused was required to muster with the noncommissioned officer on a holiday and that may have been only a variation from a routine guard assignment occasioned by the particular day. Because of the possibility that there are facts which could be judicially noticed by the court-martial, of which we are not informed, we shall assume the court-martial decided properly that footnote 5 applied.

The Table of Maximum Punishments provides that the sentence for the particular violation of Article 86, in the absence of competent evidence of two or more previous convictions, is confinement at hard labor for one month and forfeiture of two-thirds' pay for the same period. Hence, if the questioned exhibit, showing a previous conviction of the accused, was inadmissible, the president erred in instructing the court-martial members that they could impose a sentence which included a bad-conduct discharge, confinement at hard labor for three months, and forfeiture of two-thirds' pay per month for three months.

Prosecution Exhibit 1 is an extract copy of a portion of accused's service record, showing his conviction on July 30, 1952, by a summary court-martial. The action of the convening authority, dated July 30, 1952, is noted thereon, but in place of an approval of the officer exercising general court-martial jurisdiction, there is an approval by the law specialist. However, the latter, through what is conceded to be a clerical error, is dated July 22, 1952, or eight days prior to the date of trial. We can overlook the inaccuracy in dates, but we cannot fail to consider the absence of action by the officer exercising general court-martial jurisdiction.

In United States v. Engle, 3 USCMA 41, 11 CMR 41, we had occasion to discuss the necessary proof of finality of convictions by summary courts-martial before they were competent as evidence of prior convictions. There we set out the pertinent provisions of the Manual and the Naval Supplement to the Manual for Courts-Martial, supra, and concluded:

"When we consider the provisions of the Manual, together with those of the Naval Supplement to the Manual, the procedure by which review of a summary court-martial conviction is effected requires that the result of trial need only be promulgated to the accused, but that the convening authority's action should be noted on the record of trial, and entered on the service record; and that *thereafter a copy of the record must be forwarded to the officer exercising general court-martial jurisdiction, who must then place his action upon the record and this action must also be noted on accused's service record.*" [Emphasis supplied.]

Here, as there, the exhibit fails to show action by the officer exercising general court-martial jurisdiction. Appellate Government counsel contends, however, that the instant case may be distinguished from the Engle case, supra, because here the notation of the law specialist's approval has been substituted for that of the supervisory authority. That, however, is not a permissible substitute as the duty of the officer exercising general court-martial jurisdiction cannot be delegated to the law specialist. Furthermore, both must act and we cannot presume that the officer exercising general court-martial jurisdiction has acted because the record establishes that the law specialist has performed his task. Article 65(c), Uniform Code of Military Justice, 50 USC § 652, sets forth the appellate review procedure to be followed with re-

gard to a record of conviction by a summary court-martial. It is as follows:

"All other special and summary court-martial records shall be reviewed by a judge advocate of the Army or Air Force, a law specialist of the Navy, or a law specialist or lawyer of the Coast Guard or Treasury Department and shall be transmitted and disposed of as the Secretary of the Department may prescribe by regulations."

Paragraph 0107, Naval Supplement to the Manual for Courts-Martial, supra, (Change 3, effective January 31, 1952), requires that the records of summary courts-martial be sent to the officer exercising general court-martial jurisdiction for review by a law officer. Thereafter, the following procedure is prescribed:

"After review by the law specialist, *the supervisory authority*, unless he disagrees with the recommendations of the law specialist as to matters of law, *shall place his action on the record.* In the event of such disagreement with the recommendation of the law specialist, he may either act on the record or forward it to the Judge Advocate General for review, stating his reasons therefor in the letter of transmittal. An action on the record by the supervisory authority shall affirmatively indicate that the record was reviewed by a law specialist by including the statement 'This record has been reviewed in accordance with the provisions of Art. 65(c), UCMJ.' Where the supervisory authority's action is inconsistent with the recommendation by the law specialist as to matters of law, a signed copy of the law specialist's recommendation shall be made a part of the record, and the supervisory authority's action shall give his reasons for disagreement therewith." [Emphasis supplied.]

We believe the foregoing authorities support the accused's contention that finality of the conviction reflected in Prosecution Exhibit 1 was not shown. If the officer exercising general court-martial jurisdiction agreed with the law specialist's approval of the convic-

tion, the regulations required a notation of such action on the record, and this should be included in accused's service record. See paragraph 0114b, Naval Supplement. Again, we refer to the language in United States v. Engle, supra:

". . . The regulations of the Manual and its Naval Supplement require that in recording a conviction by summary court-martial any action subsequent to the approval of the convening authority must be noted in the service record of the accused. We must presume regularity in the keeping and copying of the records involved and that had action been taken by the supervisory authority it would have been duly recorded in the service record and truly reflected in the exhibits. If we do that, the exhibits affirmatively show that the officer exercising general court-martial jurisdiction has not acted. While there was no objection to their admission, they cannot constitute evidence of finality because they deny the very thing they seek to establish. There might be a substitute for the order publishing the result of trial (Article 90e, Manual for Courts-Martial, United States, 1951) were it not for the fact that any claim to finality is effectively destroyed by the affirmative showing that appellate review was not completed."

We are not unaware of the information contained in Appellate Exhibits 1 and 2, accompanying the briefs on appeal, which indicates that the prior conviction was, in fact, final. However, these exhibits are not part of the record and cannot be considered by us as forming a foundation for the admissibility of the exhibit. Since Prosecution Exhibit 1, which was before the court, failed to establish finality of the conviction, it follows that the sentence adjudged was illegal.

The decision of the board of review is reversed, and the record is returned to The Judge Advocate General of the Navy for action consistent herewith.

Chief Judge QUINN and Judge BROSMAN concur.