UNITED STATES, Appellant

v

DANNY L. NAPIER, Specialist Four, U. S. Army, Appellee

20 USCMA 422, 43 CMR 262

No. 23,365

March 26, 1971

*Colonel David T. Bryant* argued the cause for Appellant, United States. With him on the brief were *Captain Benjamin G. Porter* and *Captain Merle F. Wilberding.*

*Captain Kenneth A. Griffiths* argued the cause for Appellee, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Captain Howard L. Kaplus.*

## Opinion of the Court

QUINN, Chief Judge:

Pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Judge Advocate General of the Army referred the case to this Court for review of the correctness of the decision of the United States Army Court of Military Review setting aside the accused's conviction. The Court of Military Review deemed the record of trial incomplete in a material respect and entertained "some doubt" as to the record's accuracy.

Few of the records of trial we have seen reflect the regard for the rights of an accused and the insistence upon compliance with the procedures required by law that were evidenced by the military judge in this case. Yet, he made a mistake. Before authenticating the transcript of the trial, he did not note that a part of the proceedings preliminary to the plea was omitted. When the case was pending review by the Court of Military Review, he filed a certificate of correction to indicate the proceeding had, in fact, been had at trial, but that the reporter had "inadvertently failed" to include it in the official transcript. Although the accused did not challenge the truthfulness of the certificate, the Court of Military Review granted a defense motion to strike it. Then, considering the transcript as though the proceeding had not been had, the court concluded the omitted proceeding was "such an important part of the arraignment" that the conviction could not stand.

A certificate of correction is intended to relate "the true facts"; its purpose is to show that the trial court actually "performed its duty properly, but through clerical error or inadvertence the events . . . [were] improperly recorded" in the authenticated transcript. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 86c; United States v Vintress, 17 USCMA 258, 38 CMR 56 (1967). It is not new evidence or merely an appellate exhibit; rather, it is an integral part of the transcript of the trial. United States v McKnight, 4 USCMA 190, 15 CMR 190 (1954). Cf. United States v Roberts, 7 USCMA 322, 32 CMR 112 (1956). Consequently, in the absence of fraud or mistake, the certificate, like other parts of the authenticated transcript, is presumed to be true; if it indicates that what actually occurred satisfied the requirements of law, the record, with the certificate, must be regarded as complete and free from error. United States v Vintress, supra, at page 260; United States v Snook, 12 USCMA 613, 619–620, 31 CMR 199 (1962); United States v Payne, 12 USCMA 455, 460, 31 CMR 41 (1961). If the certificate discloses error, it does not mean that the certificate is automatically stricken so that the record appears as though no certificate had been filed. United States v Vaughan, 3 USCMA 121, 127–128, 11 CMR 121 (1953). A certificate may be completely disregarded only if it refers to an event that did not actually take place at trial; that kind of document is not a certificate of correction. United States v Nicholson, 10 USCMA 186, 189, 27 CMR 260 (1959); United States v Hollis, 11 USCMA 235, 29 CMR 51 (1960). It is difficult, therefore, to understand the Court of Military Review's ruling on the defense motion to strike. However, the ruling has not been chal-

lenged by the Government. For purposes of this case, and without deciding the correctness of the conclusion, we shall consider the record as not containing the certificate of correction.

Initially, the accused was charged with six acts of misconduct, including assault upon two soldiers with intent to commit murder and wrongful possession of marihuana. On October 5, 1969, the charges were referred to trial before a general court-martial. Two days before trial, the accused and his counsel had agreed with the convening authority that the offense of assault with intent to murder would be reduced to the lesser offense of assault with a dangerous weapon and the accused would plead guilty to that offense and all other charges as alleged.

The trial started with proceedings before the military judge alone, as authorized by Article 39(a), Code, supra, 10 USC § 839. In the course of the session, the judge considered the accused's proposed plea of guilty. The judge pointed out to the accused the legal consequences of a plea of guilty and the effect of a stipulation of facts to which he and his counsel had consented. He described the elements of the offenses and, with one exception, the accused admitted doing every act alleged in each specification.[1] The exception was in connection with the marihuana offense. As to that, the accused contended he had been drinking and did not know how the marihuana had gotten into his shirt pocket. Eventually, the judge indicated that he was satisfied as to the providence of the plea as to all the offenses but the marihuana charge. He recessed the session to October 23, to allow the parties to consider the effect that nonacceptance of the plea of guilty to this charge would have on the agreement with the convening authority and on the necessity to produce witnesses to prove the marihuana charge in place of the stipulation of facts. Instead of

continuing on the adjourned date, however, the Article 39 session was resumed one and one-half hours later. The judge was informed that the convening authority had withdrawn the marihuana charge and both the Government and the accused were ready to proceed with trial of the other charges before the military judge alone.

Further proceedings resulted in renumbering of the charges, a copy of which was in the possession of defense counsel, to reflect withdrawal of the marihuana offense and the grant of a defense motion to dismiss specification 3, Charge I, on the ground that it was "multiplicious." Additionally, defense counsel assured the judge that the change in the number of charges did not affect the agreement to plead guilty because the purpose of the agreement had been to effect substitution of the lesser charge of assault with a dangerous weapon for the charge of assault with intent to murder and that purpose had been achieved. The accused reaffirmed his consent to the stipulation of facts and to trial before the judge alone. The proceedings continued as follows:

"MJ: . . . And I now announce that the court is assembled and we will proceed with the case. I now ask the accused, how does he plea[d]?

"DC: Sir, the accused pleads:

"To all Charges and Specifications, Guilty.

"MJ: All right. Thank you, you may be seated. Okay, will you rise please, Specialist Napier? Specialist Four Danny L. Napier, it is my duty as military judge to inform you that in accordance with your pleas, this court finds you:

"Of all Specifications and Charges, Guilty.

"All right, you may be seated. The court will now hear the per-

[1] The scope of the inquiry may be gleaned from the extract as to one of the offenses which is set out in the Appendix to this opinion.

sonal data concerning the accused. . . ."

On reviewing the record of trial, the Court of Military Review noted the following: (1) That the judge did not say that the accused would be arraigned; (2) that the transcript of the proceedings did not indicate whether the accused had been asked if he desired to have the charges read and did not indicate that he had waived the reading; (3) that the transcript did not at this point set out "verbatim" the charges and specifications on which the accused was to be arraigned; did not indicate the name and description of the accuser; did not set out the affidavit of the accuser as to the truthfulness of the charges; and did not describe the reference of the charges to trial. Each of the missing items is provided for in the Trial Procedure Guide of the Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 8b, at page A8–13.[2] The Court of Military Review determined that the Trial Procedure Guide prescribed "basic arraignment procedure," and concluded that, as a result of the omissions noted, the record of trial did not provide reasonable assurance that the pleas, findings, and sentence "formally relate to any particular charges." It set aside the findings of guilty and the sentence, and directed a rehearing.

We assume, without deciding, that the Trial Procedure Guide is "as controlling as a portion of the text of the Manual." United States v Cambridge, 3 USCMA 377, 382, 12 CMR 133 (1953). Yet, it is arguable that the part in issue is inapplicable to a trial before a military judge sitting without court members. The Trial Procedure Guide advises the military judge sitting alone to "make appropriate omissions from the procedure." Id., first Note under subsection b, at page A8–7. No reason is advanced by the Court of Military Review or the accused to justify reading the charges aloud when the trial is before the military judge on a plea of guilty. Before the accused enters a plea of guilty, the judge must consider the charges in detail with the accused, in connection with his inquiry into the providence and voluntariness of the proposed plea of

---

[2] The Trial Procedure Guide, Appendix 8b, at page A8–13, Manual for Courts-Martial, United States, 1969 (Revised edition), describes the procedure as follows:

"MJ: The accused will now be arraigned.

"NOTE. The TC now should present to the members of the court and the MJ copies of only those charges and specifications *upon which the accused is to be arraigned,* unless distributed earlier with the consent of DC.

"TC: All parties to the trial have been furnished with a copy of the charges. Does the accused desire that they be read?

"DC: The accused (waives the reading of the charges) (desires that the charges be read).

"NOTE. If the accused desires that the charges be read, the TC now reads the charges and specifications on which the accused is to be tried, with the name and description of the accused, the affidavit, and the reference for trial. They are copied verbatim into the record at this point, regardless of whether the accused waives the actual reading of the charges and specifications. If the accused waives the reading of the charges, the MJ should rule on the waiver and the TC should make the following summary:

"MJ: The reading of the charges may be omitted.

"TC: The charges are signed by ——, a person subject to the code, as accuser; are properly sworn to before a commissioned officer of the armed forces authorized to administer oaths; and are properly referred to this court for trial by ——, the convening authority.

"TC: The charges were served on the accused by (me) (——) on ——, 19——.

. . . . .

"MJ: ——, I now ask you, how do you plead? Before receiving your pleas, I advise you that any motions to dismiss any charge or to grant other relief should be made at this time."

426

guilty; his examination must "reflect . . . that the elements of each offense charged have been explained to the accused." United States v Care, 18 USCMA 535, 541, 40 CMR 247 (1969). It would appear, therefore, to be entirely "appropriate" to omit the reading aloud of the charges just before the plea since they would already have been fully discussed. See Manual for Courts-Martial, supra, Appendix 8*b*, at page A8–14, Hearing on Proposed Guilty Plea(s).

Aside from modifications in procedure authorized by the Trial Procedure Guide, if the Manual contemplates that the charges should be read aloud in all cases, or that the reading be waived by the accused, and that they must then be copied into the record at the point of the proceedings designated in the Guide, the question still remains as to whether these requirements are so important to trial on a plea of guilty that the proceedings must be invalidated, notwithstanding the allegations of each specification appear elsewhere in the transcript and the transcript demonstrates that the accused possessed a copy of the charges.

We have often observed that the failure to follow a procedure prescribed by law is error, but a particular procedural error does not necessarily justify reversal of an otherwise valid conviction. United States v Cruz, 10 USCMA 458, 28 CMR 24 (1959); United States v Jenkins, 20 USCMA 112, 42 CMR 304 (1970); cf. United States v Dean, 20 USCMA 212, 43 CMR 52 (1970). If the purpose of the procedure is not frustrated by what was done and the accused is not prejudiced, reversal is not ordinarily required. United States v Jenkins, supra; United States v Nichelson, 18 USCMA 69, 73, 39 CMR 69 (1968). Even where the erroneous procedure is the kind that raises a presumption of prejudice, reversal· is not required if it clearly and convincingly appears from the transcript that no harm accrued to the accused. United States v Allbee, 5 USCMA 448, 18 CMR 72 (1955); United States v For-

werck, 12 USCMA 540, 544–545, 31 CMR 126 (1961). Here, the transcript of the trial shows the defense had a copy of the charges in its possession; that each offense was discussed with the accused, and he indicated his understanding of the elements of each offense; that one charge as to which he expressed some doubt of guilt was withdrawn and another charge was ·dismissed for multiplicity, with the accused declaring his understanding of each disposition. It is, therefore, manifest that while the charges and specifications do not appear in the record at the specific place designated in the Trial Procedure Guide, they are described in detail in the transcript before the formal entry of the plea of guilty. It is equally manifest that the accused knew and understood each of the offenses to which he pleaded guilty.

Imagination suggests no detriment to the accused and no impairment of the integrity of the proceedings that can result from appearance of the charges in the transcript at a place different from that indicated in the Trial Procedure Guide. Since each specification appears in the transcript, the accused can, regardless of its place, challenge its sufficiency to state an offense. See United States v Fout, 3 USCMA 565, 13 CMR 121 (1953). Although he has not to this point, the accused can challenge the providency of his plea of guilty without regard to the place in the record at which the specification appears. See United States v Welker, 8 USCMA 647, 25 CMR 151 (1958). Finally, the accused is protected against a second prosecution for the same misconduct on the transcript as a whole, not on the position of the specification therein. See United States v Carter, 16 USCMA 277, 284–286, 36 CMR 433 (1960).

So far as the failure of the transcript to include the affidavit of the accuser is concerned, it is well settled that, in the absence of objection, the accused can be tried on unsworn charges. United States v Taylor,

15 USCMA 565, 36 CMR 63 (1965). There was no objection here. As to the reference of the charges to trial, an oral reference is valid. United States v Emerson, 1 USCMA 43, 45, 1 CMR 43 (1951); see also United States v Heaney, 9 USCMA 6, 25 CMR 268 (1958). Here, the transcript shows a representation by trial counsel that the charges were "properly referred to the court for trial." In the absence of objection, and there is none, the representation must be taken as true. United States v Nichelson, supra, at page 72.

Although the Court of Military Review expressed "some doubt" as to the accuracy of the transcript, neither it nor appellate defense counsel have referred to a single instance of questionable reporting. Our reading of the transcript, in the light of the certificate of correction which was used by the Court of Military Review for this purpose, reveals no hint of inaccuracy in recording the actual proceedings. What apparently troubled the Court of Military Review was that the certificate indicated the reporter had at this point of the proceedings copied the original charges into his notes, rather than the amended charges. This is so manifestly a clerical error, that no one could possibly contend that, had the reporter prepared the transcript in accordance with his notes, the accused would be held to have pleaded guilty to assault with intent to murder instead of assault with a dangerous weapon. We are convinced, therefore, that if it was error not to set out the charges and related matters at the place in the trial proceedings indicated in the Trial Procedure Guide of the Manual, the error did not prejudice the accused and did not cast doubt upon the integrity of the trial.

We answer in the affirmative the first certified question which asks whether the record of trial is sufficiently complete to show all the essential jurisdictional facts and protect the accused against double jeopardy. This answer makes it unnecessary to consider the second question.

428

The decision of the Court of Military Review is reversed, the record of trial is returned to the Judge Advocate General of the Army for resubmission to the Court of Military Review for further proceedings consistent with this opinion.

## APPENDIX

"MJ: . . . Now, let's get down to the next offense, assault with a dangerous weapon, to wit: an M16 rifle. Upon Merck and Cassidy, the alleged victims. That's in violation of a different law, Article 128, passed by Congress. You know what the term assault means. Now when Cassidy hit you across the mouth, he assaulted you.

"ACCUSED: Yes, sir.

"MJ: I guess Cassidy could be tried, or punished, for that. He likewise was violating the law from the facts I see that you have given me. But that was probably a simple assault and battery. The law makes it more serious when you use a dangerous weapon to assault someone with, such as an M16 rifle. Now the elements that constitute that offense are as follows. Now, let me ask the trial counsel, what time did you intend to have the court appear?

"TC: 1300 hours, sir.

"MJ: Okay. Now here's what you're admitting, here are the elements you admit as to that last offense, the Specification of Charge II. First, that at Gia Le Combat Base, Republic of Vietnam, on or about 2230 hours, that's 10:30 in the evening, about that time, 15 July 1969, you the accused offered to do bodily harm to Specialist Four William F. Cassidy and Specialist Four Joseph L. Merck. Do you admit that you intended to do that? To do bodily harm to them when you fired the rifle?

"ACCUSED: Yes, sir.

"MJ: The next element is that you did so by shooting at them with an M16 rifle.

"ACCUSED: Yes, sir.

"MJ: The next element is that you, the accused, did so with a certain dangerous weapon, to wit: an M16 rifle.

"ACCUSED: Yes, sir.

"MJ: And the next element is that the offer to do bodily harm to them was done with unlawful force or violence.

"ACCUSED: Yes, sir.

"MJ: Now what I mean by that is that if you were acting in self-defense, I'm not saying you were on this case, but the reason why, you can still intend to shoot a person to defend your life. That's not unlawful; that is lawful. But in this case, with the facts you indicate to me, you had no right to fire at them. Legal right. And the next element is that the dangerous weapon was used in a manner likely to produce grievous bodily harm. Now let me tell you what grievous means. It means serious bodily injury. Grievous bodily harm does not include minor injuries, such as a black eye or a bloody nose; but does include fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs, and other serious bodily injuries. In other words, the offense includes this; that when you offered to do bodily harm to them, you did it with a means that was likely to produce grievous bodily harm. Meaning that if you hit them with that bullet, it would have been a serious injury rather than just like a punch in the nose or getting a black eye. Do you understand that?

"ACCUSED: Yes, sir.

"MJ: Do you admit to that?

"ACCUSED: Yes, sir.

"MJ: That you used this weapon in such a manner that it could have produced grievous bodily harm. Do you admit to that?

"ACCUSED: Yes, sir.

"MJ: Now, did they know you were firing at them?

"ACCUSED: Yes, sir.

"MJ: Did they yell to you to put the gun down?

"ACCUSED: No, sir, they were running.

"MJ: They were running.

"ACCUSED: Yes, sir.

"MJ: That was after you fired?

"ACCUSED: Yes, sir.

"MJ: How about before you fired at them? Did they know you were going to fire at them?

"ACCUSED: No, sir, they didn't know."

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

This case is before us on certification by the Judge Advocate General of the Army for review of the correctness of the decision of the Court of Military Review in setting aside the accused's conviction and directing that a rehearing may be ordered. That court's decision was based on the fact that the record of trial failed to reflect that the accused had been formally arraigned. Paragraph 65a and the Guide—Trial Procedure, Appendix 8, Manual for Courts-Martial, United States, 1969 (Revised edition); United States v Boehm, 17 USCMA 530, 38 CMR 328 (1968); United States v Robinson, 13 USCMA 674, 33 CMR 206 (1963). My brothers hold that if it was error not to follow the procedures indicated in the Manual, the error, under the circumstances of this case, did not prejudice the accused and did not cast doubt upon the integrity of the trial. I disagree.

In McClaughry v Deming, 186 US 49, 62, 46 L Ed 1049, 22 S Ct 786 (1902), the Supreme Court held:

". . . A court-martial is the creature of statute, and, as a body or tribunal, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction."

And in Runkle v United States, 122 US 543, 555, 556, 30 L Ed 1167, 7 S Ct 1141 (1887), the following appears:

"A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accomplished it is dissolved. . . . To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; *that all the statutory regulations governing its proceedings had been complied with,* and that its sentence was conformable to law." [Emphasis supplied.]

See also Dynes v Hoover, 20 Howard 65 (U. S. 1858); United States v Brown, 206 US 240, 51 L Ed 1046, 27 S Ct 620 (1907); United States v Vanderpool, 4 USCMA 561, 16 CMR 135 (1954); United States v Robinson, supra.

Paragraph 65, Manual, supra, provides in part:

"ARRAIGNMENT. *a. General.* When a general or special court-martial has been organized and both parties are ready to proceed, the trial counsel will present the court with copies of the charges and specifications upon which the accused is about to be tried. . . . *The trial counsel will then read to the accused the charges and specifications.* Thereafter, each accused will be called upon to plead. This proceeding constitutes the arraignment. The pleas are not part of the arraignment. *The accused may waive the reading of the charges and specifications.*

. . . . .

"If an Article 39(a) session is conducted by the military judge prior to assembly, the *arraignment* may be held and the pleas of the accused accepted at that time if permitted by the regulations of the Secretary concerned." [Emphasis supplied.]

Appendix 8*b*, Manual, supra, page A8–13, describes the arraignment procedure as follows:[1]

"MJ: The accused will now be arraigned.

"NOTE. The TC now should present to the members of the court and the MJ copies of only those charges and specifications *upon which the accused is to be arraigned,* unless distributed earlier with the consent of DC.

"TC: All parties to the trial have been furnished with a copy of the charges. Does the accused desire that they be read?

"DC: The accused (waives the reading of the charges) (desires that the charges be read).

"NOTE. If the accused desires that the charges be read, the TC now reads the charges and specifications on which the accused is to be tried, with the name and description of the accuser, the affidavit, and the reference for trial. *They are copied verbatim into the record at this point, regardless of whether the accused waives the actual reading of the charges and specifications.* If the accused waives the reading of the charges, the MJ should rule on the waiver and the TC should make the following summary:

"MJ: The reading of the charges may be omitted.

"TC: The charges are signed by ————, a person subject to the code, as accuser; are properly sworn to before a commissioned officer of the armed forces authorized to administer oaths; and are properly referred to this court for trial by ————, the convening authority.

"TC: The charges were served on the accused by (me) (————) on ——, 19——.

"NOTE. Unless the date of service is at least five days prior to the

[1] The arraignment procedure is the same when the arraignment is held at the Article 39(a), Uniform Code of Military Justice, 10 USC § 839, session. See NOTE, page A8–6, Manual for Courts-Martial, United States, 1969 (Revised edition).

date of trial, except in time of war, the accused may object to this defect in service (Art. 35). See 58c. If he does so, the court must grant a continuance at this point.

"MJ: ————, I now ask you, how do you plead? Before receiving your pleas, I advise you that any motions to dismiss any charge or to grant other relief should be made at this time.

"NOTE. The arraignment is complete when the accused is asked how he pleads. Neither pleas nor motions are part of the arraignment (65a)." [Emphasis partially supplied.]

These provisions of the Manual state valid principles of procedure and are not contrary to or inconsistent with the Uniform Code of Military Justice. Article 36(a), Code, supra, 10 USC § 836. They are consonant with the context and clear intention of the Code. As such, they have the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105 (1962).

In the case at bar, the accused, at his request, was tried by a military judge sitting alone. Of the seventy-seven pages of the record, sixty-two covered the Article 39(a) session. After approving the accused's request for trial by judge alone, the record discloses the following:

"MJ: . . . I now announce that the court is assembled and we will proceed with the case. I now ask the accused, how does he plea [sic]?

"DC: Sir, the accused pleads:

"To all Charges and Specifications, Guilty.

"MJ: All right. Thank you, you may be seated. Okay, will you rise please, Specialist Napier? Specialist Four Danny L. Napier, it is my duty as military judge to inform you that in accordance with your pleas, this court finds you:

"Of all Specifications and Charges, Guilty."

The record fails to reflect adherence to the basic arraignment procedures detailed in the Manual. The charges and specifications were not read to the accused and he was not requested to waive the reading thereof. Of more importance is the fact that the charges and specifications were not incorporated in the record verbatim, nor does the record reflect the name and description of the accuser, his affidavit, and the necessary data reflecting that the charges were referred to trial.

Because of this deficiency in the record, the Court of Military Review requested briefs from counsel on the question of whether the failure to follow the prescribed procedure for arraignment precluded affirmance of the conviction. As part of its reply the Government included a certificate of correction from the trial judge which purported to correct the deficiency. However, because the certificate of correction contained patently erroneous information,[2] appellate Government counsel joined with appellate defense counsel in its motion requesting the Court of Military Review to strike the certificate from the matters it would consider. The Court of Military Review also declined to consider Appellate Exhibit 1, the pretrial agreement executed between the accused and the convening authority. Although the agreement sets forth the charges and specifications, it did not reflect the additional pertinent data from the charge sheet and, like the certificate of correction, contained patently erroneous information.[3] Since the record of trial did not contain "all the essential jurisdictional facts"

_____

[2] The certificate of correction listed, among the charges and specifications, one offense that was dismissed by the convening authority before trial and another offense that was dismissed by the trial judge himself prior to the entry of the accused's plea. Hence, the certificate of correction reflected pleas and findings of guilty to two offenses that were nonexistent.
[3] The dismissed charges and specifications were also included in the agreement.

**431**

(paragraph 82b, Manual, supra), the Court of Military Review reversed the accused's conviction.

Paragraph 82b, Manual, supra, provides in part:

". . . The record of the proceedings in each case will be separate and complete in itself and independent of any other document. The record will show *all the essential jurisdictional facts.*" [Emphasis supplied.]

A verbatim listing of the charges and specifications, as in Appellate Exhibit 1 (the pretrial agreement), is not the whole of the charge sheet upon which the accused is tried. A most necessary part thereof is that data detailing the identity of the accuser, his affidavit as to his knowledge of the charges, and the concomitant referral of the charges to a particular court-martial convened by order of the convening authority. Without these data, it cannot reasonably be said that the court is convened "in entire conformity with the provisions of the statute." McClaughry v Deming, supra, at page 62. Jurisdiction of a court-martial does not attach simply because the parties agree thereto. United States v Robinson, Runkle v United States, and McClaughry v Deming, all supra.

I am aware that in Garland v Washington, 232 US 642, 644, 58 L Ed 772, 34 S Ct 456 (1914), the Supreme Court sustained a conviction without arraignment where "the accused had taken objections to the second information, and was put to trial before a jury upon that information in all respects as though he had entered a formal plea of not guilty." Cf. Hamilton v Alabama, 368 US 52, 7 L Ed 2d 114, 82 S Ct 157 (1961). The proceedings in that case, however, were before a duly established permanent court of that state and a duly acting judge thereof. This distinction is made clear in McClaughry v Deming, supra, at page 64:

". . . The particular [military] tribunal is a mere creature of the statute, as we have said, and must be created under its provisions. . . . A court-martial is wholly unlike the case of a permanent court created by constitution or by statute and presided over by one who had some color of authority although not in truth an officer *de jure,* and whose acts as a judge of such court may be valid where the public is concerned."

I am of the opinion that the deficiency in this record is of such a nature as to deprive the court of jurisdiction and its actions, therefore, were null and void.

In his certificate, the Judge Advocate General asks the following questions:

I. "Is the record of trial sufficiently complete to show all the essential jurisdictional facts and protect the accused against double jeopardy?"

II. "If the first question is answered in the negative, is a rehearing the proper remedy?"

I would answer the first question in the negative and the second in the affirmative.