## UNITED STATES

### v.

**Russell A. HATLEY, 408 19 2711, Seaman Apprentice (E–2), U.S. Naval Reserve.**

### NMCM 82 2444.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 18 Nov. 1981.

Decided 28 Oct. 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LT Judy A. Jacobson, JAGC, USNR, Appellate Defense Counsel.

LT Darrell M. Grams, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, KERCHEVAL and BARR, JJ.

BARR, Judge:

Appellant, a member of the United States Naval Reserve on active duty, was tried by special court-martial on charges of desertion (Charge I) and breaking restriction (Charge II), violations of Articles 85 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885, 934, respectively.

Pursuant to his pleas, he was found guilty of the lesser offense of unauthorized absence for a period of approximately 29 months, in violation of Article 86, UCMJ, 10 U.S.C. § 886, and breaking restriction. During the providence inquiry into both offenses, *United States v. Care*, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969), the appellant acknowledged his active duty status and thereby established, even though not raised as a matter in issue, the jurisdiction of the trial court to try him as a person subject to the reach of Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1). As to the offense of breaking restriction, the appellant recited those facts and circumstances sufficient to find that he was duly placed in restriction by competent authority, that he had knowledge of his status and the limits of restriction, and that he went beyond those limits without authority. The military judge sentenced the appellant to the jurisdictional maximum punishment of a special court-martial. The convening authority approved the sentence, but suspended the bad-conduct discharge and confinement in excess of 90 days, notwithstanding the presence of five prior nonjudicial punishments and a previous conviction by special court-martial.

On appeal, and in response to the assertions by appellant that his conviction of Charge II, breaking restriction, is invalid, the government moved for oral argument before this Court, reciting the importance to the naval service of the issues addressed. As one of the assignments of error involved an interpretation of both the reach and the remedy of *United States v. Alef*, 3 M.J. 414 (C.M.A.1977), we granted the motion for oral argument.

The offending charge and specification reads:

In that Seaman Apprentice Russell A. Hatley, U.S. Naval Reserve, USS MANITOWOC (LST–1180), having been duly restricted to the limits of the USS MANITOWOC (LST–1180), Little Creek, Norfolk, Virginia, did, at USS MANITOWOC (LST–1180), Little Creek, Norfolk, Virginia, on or about 31 March 1979, break said restriction.

We now consider, and shall address *seriatim,* appellant's challenges to the adequacy of the providence inquiry into the offense of breaking restriction, as well as the sufficiency of the form in which it was pled.

I

THE INQUIRY OF THE MILITARY JUDGE INTO THE PROVIDENCY OF THE APPELLANT'S PLEA OF GUILTY TO CHARGE II AND ITS SPECIFICATION WAS INSUFFICIENT BECAUSE THE MILITARY JUDGE DID NOT QUESTION THE APPELLANT CONCERNING HIS UNDERSTANDING OF HOW HIS CONDUCT WAS PREJUDICIAL TO GOOD ORDER AND DISCIPLINE, WHICH IS AN ESSENTIAL ELEMENT OF THE OFFENSE. *UNITED STATES V. WILLIAMS,* 8 U.S.C.M.A. 325, 24 C.M.R. 135 (1957); *UNITED STATES V. CARE,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); *SEE ALSO UNITED STATES V. MODESETT,* 9 U.S.C.M.A. 152, 25 C.M.R. 414, 416 (1958).

■ The decision of this Court in *United States v. Bazan,* 7 M.J. 694, 695 (N.C.M.R. 1979), is dispositive of this asserted error. There, faced with a similar contention, we stated:

The military judge's inquiry established the factual basis for appellant's plea. The facts elicited from appellant proved every element of the offense. The military judge is not required to elicit from the accused the latter's conclusions of law, as long as the facts developed support the conclusions of law and it is clear that the accused believes the facts and believes that he is guilty. (citations omitted).

To require a person accused of, and pleading guilty to, a violation of Article 134, UCMJ, to parrot the elemental words that his conduct was prejudicial to good order and discipline or service discrediting imparts neither additional facts nor wisdom to an otherwise sufficient factual inquiry.

This appellant unequivocally admitted all provable facts; the military judge, utilizing this admission as a factual predicate, concluded *as a matter of law* that the facts admitted, and conduct charged, were prejudicial to good order and discipline. As this conclusion of law finds adequate support in the providence disclosures of the appellant, and the factual inquiry was legally sufficient when measured by the standards enunciated in *United States v. Care, supra,* we reject this assignment of error.

II

THE SPECIFICATION UNDER CHARGE II IS FATALLY DEFECTIVE BECAUSE IT DOES NOT SET FORTH ANY ALLEGATION OF THE FACTS IN SUPPORT OF PERSONAL JURISDICTION OVER THE APPELLANT. THE SPECIFICATION LISTS APPELLANT AS "U.S. NAVAL RESERVE," BUT IT FAILS TO ALLEGE THAT HE WAS ON ACTIVE DUTY AT THE TIME OF THE COMMISSION OF THE OFFENSE CHARGED. *UNITED STATES V. ALEF,* 3 M.J. 414 (C.M.A. 1977).

We commence our inquiry into this assignment of error by observing that the issue is not whether *in personam* jurisdiction in fact existed over the appellant. The factual existence of jurisdiction is well established by the evidence of record, which includes the appellant's admission that his active duty status commenced on 17 February 1977 and continued through the date of trial. The principle of law established in *United States v. Garcia,* 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954), that one who at trial factually admits and consents to the jurisdiction of the court over his person is estopped from contradicting that admission on appeal is thus of little assistance in resolving the limited issue presented. Similarly, the requirement of law that the Government bear the burden of affirmatively and clearly proving *in personam* jurisdiction in all cases *in which the issue is raised, United States v. Graham,* 22 U.S.C. M.A. 75, 46 C.M.R. 75 (1972), is inapposite to

the issue at hand. The sole issue now in controversy is whether the term "on active duty," as applied to a member of the Naval Reserve serving in that status, is a jurisdictional fact which perforce must be pleaded within the specification, and whether, failing such averment of status, the specification is thereby rendered fatally defective.

We must first determine what appellant means by asserting the specification to be "fatally defective." There is no citation to law or regulation by appellant for this proposition, other than reliance upon the decision of the United States Court of Military Appeals in *United States v. Alef,* 3 M.J. 414 (C.M.A.1977), which, for reasons to be enunciated below, we believe to be misplaced.

Prior to the *Alef* decision, and the consequent confusion it has engendered, a most forthright approach to resolving this assertion existed. The initial step was to determine if the gravamen of the claim was laid under paragraph 68*b*(3) or 69*b, Manual for Courts-Martial, 1969, (Rev.)* (MCM), as the nature of the complaint would control the remedial disposition ordained. Paragraph 68*b*(3) is the appropriate provision to press where the specification fails to allege *any* offense triable by courts-martial. The exclusive remedy for such failure is to dismiss the specification, regardless of whether or not relief was requested at trial, for proceedings had thereon are a nullity. The concept of waiver cannot be invoked. To the contrary, in both remedy and reason, is a claim laid under paragraph 69*b,* which, by its very language, specifically excludes a claim cognizable by paragraph 68*b*(3). Proceedings had thereon are not rendered a nullity as a matter of law. A complaint laid under paragraph 69*b* would assert that, although the specification alleges an offense, it is otherwise defective, in form or substance, and thus exists as an impediment to the ability of the accused to prepare for trial or conduct his defense. To obtain the benefit of a remedy for such defect, a motion for appropriate relief must be raised before the trial court, with whom lies the power to fashion a remedy appropriate to the defect asserted. In the absence of a

request for relief before the trial court, the right to complain is thereafter waived and, in contrast with a motion raised under paragraph 68*b*(3), does not survive through the appeal process as a litigable issue. If, therefore, appellant is now seeking relief under paragraph 69*b*, his failure to assert his claim at trial estops him from litigating the issue *de novo* on review.

█ Does the specification, absent the phrase "on active duty," state an offense so as to preclude application of the remedy provided in paragraph 68*b*(3)? We think so. The time-honored and well-established test for determining the sufficiency of a specification is clearly set forth in *United States v. Sell,* 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953):

> The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification. For a certainty, appellate tribunals should not permit a pleading to be challenged for the first time on appeal merely because it is loosely drawn.

The general principle alluded to in *Sell* is clearly satisfied in this case, for appellant's acknowledgement of his status to the trial court precludes a finding that the defect, if it be one, was prejudicial to any right possessed or imagined by him if the test is otherwise met. Applying the three-pronged test recited above to the specification as drafted, we find it passes muster. The specification was adopted verbatim from sample form number 175 in Appendix 6c, MCM. The time, place, manner, and nature of the offense are so clearly set forth that no one could contend that appellant was not aware of the allegation he was called upon to defend against or that he is not conclusively protected against double jeopardy. The essential elements of breaking restriction are also set forth in clear and unequivocal terms.

Any claim that a defendant's status, though a matter essential to the court's exercise of jurisdiction over his person, is an element of the offense, and thus subject to the *Sell* test, was definitively laid to rest by this Court's decision in *United States v. Bailey,* 6 M.J. 965, 968 (N.C.M.R.1979) (en banc):

> In a purely military offense the accused's status is always a part of, or fundamentally underlies, one of the elements, but *it is not, itself, a separate element.* (emphasis added).

We must finally, in assessing the impact of *Sell,* determine whether, by fair construction, the necessary facts appear within the terms of the specification. The term "necessary facts" must take its meaning from, and thus be limited by, the three-pronged test for judging the sufficiency of the specification. All necessary facts would be found if the specification contains a factual statement of the legal elements and the averred facts are sufficient to meet the notice and double jeopardy interests served by the test. As status is neither an element of the offense nor relevant to the notice and double jeopardy prongs, the necessary facts are well-evidenced in the specification in question.

Though we anticipate our discussion of the application of *Alef,* to the facts of this case, we find support for our conclusion that the principle, test, and pleading requirements of *Sell* are satisfied in the case *sub judice* by referring to the concurring opinion of Judge Gladis in *United States v. Jones,* 7 M.J. 806, 813 (N.C.M.R.1979):

A specification setting forth the rank or rating and military unit of the accused, and stating that he is in the United States Marine Corps or Navy, is sufficient to allege jurisdiction over the person of the accused. Such a specification alleges by fair implication that the accused has been properly enlisted and is on active duty. (footnote omitted).

Cf. *United States v. Sturwold,* 12 M.J. 931 (N.M.C.M.R.1982). The fact that *Jones* involved a member of the regular component of the service and *Sturwold,* though dealing with a member of the Naval Reserve, contained the phrase "on active duty" within the specification, is of no moment in determining whether the traditional test of *Sell* is met. If the specification can avoid the reach of *Alef,* then, applying the principle enunciated in *Jones,* the proper inferences which can be drawn from the language of the specification, absent some indication to the contrary, support the conclusion that an offense is clearly set forth and, thus, paragraph 68*b*(3), MCM, is of no benefit to appellant.

What then of *Alef?* It is not vacuous to suggest that, but for *Alef,* no issue regarding the sufficiency of the specification of Charge II would ever have been presented. To so conclude, however, does not permit us to avoid its consideration. Appellant relies exclusively upon *Alef* in seeking dismissal of Charge II. Appellate government counsel concedes *Alef* to be pivotal to our decision. We restate our view that this blind reliance on broad language which is subject to equivocal interpretation is misplaced. The sole issue granted in *Alef* concerned the exercise of subject matter jurisdiction by a military court over off-base offenses, and hence person, of an accused. It is restating the fundamental to propound that a court does not try an offense; it tries an accused for an offense. Hence in every subject matter jurisdiction case the real issue is whether a particular accused can be tried for an offense which may or may not

be service-connected. But for two oblique references in the lead opinion to jurisdiction over, or trial of, an accused,[1] the entirety of the case is devoted to reciting the well-known *Relford* criteria,[2] factually applying those criteria to the case, lamenting the "unfortunate motion practice" then prevailing in military courts when litigating subject-matter jurisdiction issues, finding delinquency in the model specifications for failure to incorporate subject matter facts in the form "indictment" as a matter of notice to an accused, and prescribing a mandatory practice of pleading those facts relied upon in a given case to meet the *Relford* test of subject matter jurisdiction as a supplement to the "simple application of set statutory criteria" of the model specifications. Eminently clear is that the reversal in *Alef* resulted not from a failure of pleading, but from a lack of jurisdiction in the military court, when tested by the *Relford* criteria, to try the accused for the off-base offenses. *Alef* neither discussed, nor prescribed practice for, the separate and independent question of *in personam* jurisdiction in a case where the issue of subject matter jurisdiction is nonjusticiable by virtue of the pure military nature of an offense or the place of its commission.

The claim that *Alef* requires pleading this separate issue appears to be founded on two sentences in the opinion which are oft-quoted out of context. The first reference is where the U.S. Court of Military Appeals attacks the deficiency of the sample specification forms:

The specification format currently utilized simply does not present sufficient information to demonstrate military jurisdiction; as should be readily apparent from Part I of this opinion, for (sic) more jurisdictional data is required than that presently given—the name of the defendant, his rank or military status, the date and situs of the offense, and the nature of the offenses. (footnotes omitted).

---

1. The broad language chosen by Judge Perry in his concurring opinion cannot be read to extend the basic holding of the decision in *United States v. Alef,* 3 M.J. 414 (C.M.A.1977).

2. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

*Alef, supra,* at 418. To transform this language into a general requirement that *in personam* jurisdictional facts, not included within name, rank or status, or unit, are matters to now be pleaded is to gloss over what is "readily apparent from Part I." Part I is solely devoted to an application of the *Relford* criteria to the case facts, with a resolution against military jurisdiction over the offense for lack of service-connection. Furthermore, the portion of the decision quoted above obtains its meaning from the sentences preceding and following, where the Court concludes that the bare jurisdictional data provided by the "set statutory criteria" of the model specification is insufficient to foster meaningful trial litigation of the twelve *Relford* criteria. Nothing could be more clear than that the argument of the Court in favor of averring jurisdictional data within the specification was but an articulation of the difficulties perceived to be inherent in resolving subject matter jurisdiction issues, both at the trial level and on appeal, on the basis of form, vice *Relford* criteria, pleadings. Whether the pleading of *Relford* criteria actually overcomes problems of proof at trial is not for us to decide. Clearly such a requirement serves the interest of notice to the accused which, along with matters of proof, were the expressed concerns of the Court in fashioning the *Alef* practice.

The second sentence which has generated misplaced reliance is the one which announces the new pleading requirement:

> The better practice, and the one we now make mandatory, is for the government affirmatively to demonstrate through sworn charges/indictment, the jurisdictional basis for *trial of the accused and his offenses.* (footnotes omitted).

*Alef, supra,* at 419 (emphasis added). These words, particularly those which we underline for emphasis, seem to suggest the creation of a personal, as well as subject matter, jurisdiction pleading requirement. This suggestion is ill-founded. The sentence immediately following circumscribes the reach of this mandatory practice to *Relford* criteria cases only:

> Development of this type of trial practice should ensure that military tribunals will be presented with sufficient evidence to resolve service-connection issues utilizing the approach set forth in Part I of this opinion. (footnote omitted).

*Alef, supra* at 419. We repeat, the approach described in Part I is the case-by-case analysis utilizing a balancing test of the twelve *Relford* criteria. Furthermore, in discussing the remedies available to challenge the sufficiency of the specification, the Court made clear that a motion to quash necessitated a showing of wherein the facts alleged were insufficient to demonstrate "service-connection." [3]

■ Based on the foregoing, we conclude that the *Alef*-mandated practice of pleading, within the written specification, the jurisdictional basis for trial of an accused and his offenses is limited to pleading relevant *Relford* criteria extant in a given case. *Alef,* by its very language, was never intended to, nor does it, require pleading *in personam* jurisdictional data not otherwise required by the form specifications or some other provision of the *Manual.*

Even if *Alef* required pleading *in personam* jurisdictional facts, the limited remedy afforded for its breach would preclude a *de novo* consideration by this Court at this stage of the proceedings. The Court, in footnote 18, set forth the remedies available to challenge the pleading: a motion for a Bill of Particulars for lack of specificity of facts; a motion to quash for insufficient allegations of service-connection; and a motion to quash for inaccurate allegations. It does not pass without notice that each remedy is particularly suited to achieving a factual resolution of the jurisdictional issue either before or during the trial of a case, not at the appellate level. Each remedy is encumbered by a burden which requires the person asserting the defect, that is, an accused, to demonstrate, at the threshold of trial, wherein the specification is vague, insufficient, or inaccurate. If the burden

---

3. *Alef, supra,* at 414 n. 18.

can be avoided at the trial level, but the right to challenge survives for the purpose of litigation for the first time on appeal, then the reasons for creating the pleading practice in the first instance no longer pertain. No appellate remedy can be fashioned which would serve the interests of notice to the accused, overcoming proof problems, and full litigation of the facts of subject matter jurisdiction at trial. These concerns are not matters traditionally cognizable by, or subject to the intervention of, an appellate tribunal. Appellate courts do not draft pleadings; they are thus impotent to provide the notice of jurisdictional facts which is an essential aspect to the holding in *Alef*. Nor are the fact-finding powers of an appellate court under Article 66, UCMJ, 10 U.S.C. § 866, so extensive as to render it an appropriate forum to litigate for the first time the facts of, and receive evidence on, a jurisdictional issue. Similarly, appellate courts neither direct curative action for a vague specification nor receive evidence to test the sufficiency or accuracy of a specification.

■ We are of the opinion, therefore, that, because the remedies to correct lie solely with a trial court, the right to challenge an alleged deficiency in the pleadings for failure to meet the *Alef* pleading standards is waived if not raised at trial. *See* paragraph 69*b*, MCM. To conclude otherwise would result in the application of the remedy of paragraph 68*b*(3) for a paragraph 69*b* violation. It is only where the relief is requested at trial by appropriate motion, and thereafter denied, that the right to challenge survives to the appellate level. In its consideration of an error asserting a violation of the *Alef* pleading standards, an appellate court should be limited to its traditional roles, such as testing for prejudice, assessing the decision of the military judge for abuse of discretion, and determining whether a denial of military due process resulted from the denial of relief.

■ Since we conclude that *Alef* is wholly inapposite to the factual issue at hand, one of alleging matters going strictly to *in*

*personam* jurisdiction, we look elsewhere for the requirement to plead the phrase "on active duty" within the context of a specification, for the practice is too common to have no basis in law or regulation or to be ignored. We find the procedure established in Appendix 6*a*, MCM. It is not the subject of a provision of the UCMJ nor is it independently required by case law. The *Manual* text, and hence its appendices, exist as recognized rules of practice and procedure governing courts-martial promulgated by the President as part of his responsibility and power under Article 36, UCMJ, 10 U.S.C. § 836. It is axiomatic that a provision of the *Manual,* where not inconsistent with or contrary to the UCMJ, has the force and effect of law. *United States v. Smith,* 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962). This principle perforce applies equally to a provision appearing only within the *Manual's* appendices. *United States v. Cambridge,* 3 U.S.C.M.A. 377, 12 C.M.R. 133 (1953). Recognizing, therefore, that failure to allege "on active duty" within a specification, as it applies to a member of the Naval Reserve, constitutes a violation of a procedural rule which has the force and effect of law, we must determine what effect, if any, such omission has on the proceedings. The test is found in *United States v. Napier,* 20 U.S.C.M.A. 422, 427, 43 C.M.R. 262, 267 (1971):

[T]he failure to follow a procedure prescribed by law is error, but a particular procedural error does not necessarily justify reversal of an otherwise valid conviction. *United States v. Cruz,* 10 U.S.C.M.A. 458, 28 C.M.R. 24 (1959); *United States v. Jenkins,* 20 U.S.M.C.A. 112, 42 C.M.R. 304 (1970); cf. *United States v. Dean,* 20 U.S.M.C.A. 212, 43 C.M.R. 52 (1970). If the purpose of the procedure is not frustrated by what was done and the accused is not prejudiced, reversal is not ordinarily required. *United States v. Jenkins, supra; United States v. Nichelson,* 18 U.S.M.C.A. 69, 73, 39 C.M.R. 69 (1968).

The key words are prejudice and purpose. It stretches credulity to suggest that appel-

lant, who pled guilty to the offense and unequivocally acknowledged his active duty status during providency, was prejudiced by this pleading error. Appellant asserts no prejudice and none is evident.

To determine the purpose of the rule in question we look to its historical genesis, which precedes the UCMJ as well as the 1951 and 1969 *Manuals for Courts-Martial.* Prior to 1951, the Navy was governed statutorily by the *Articles for the Government of the Navy* (Articles), and procedurally by *Naval Courts and Boards, 1937.* The Articles were as silent on this pleading issue as is the present Code. Remarkably, so was *Naval Courts and Boards, 1937.* In 1945, a work titled *Naval Justice* was published by the Bureau of Naval Personnel (NAVPERS 16199). Paragraph 9–19 thereof contains the first reference suggesting the preference for pleading the phrase "on active duty" as a part of the specification where an accused is a member of the Naval Reserve. The language is remarkably similar in content to the current *Manual* provision (Appendix 6a ). While no reason is given in the text for establishing this rule of pleading practice, we obtain from the Preface to this work an understanding of its legal effect as viewed contemporaneously with its publication:

> *Naval Justice* has been published for use as a textbook on the subject of naval law and also for use as a practical manual in the administration of naval discipline. Consequently, while it was designed with the needs of the curriculum of the newly established U.S. Naval School (Naval Justice School) in view, its character is such that it should find wide utility throughout the service as a practical handbook and guide to trial procedures, preparation of records, and many other phases of the disciplinary process.
>
> *Naval Justice* in no sense replaces Naval Courts and Boards, 1937, nor does it have the force of law or regulation. It is intended as a supplement and as an aid in the use of that book.

It is thus clear that, when first fashioned, the pleading procedure suggested in paragraph 9–19, *Naval Justice,* though offered as a matter of preferred practice, was not required by, nor did it have the force and effect of, law or regulation.

Additional insight into the nature of this suggested format of pleading is obtained by comparing Paragraph 9–19 with Paragraph 9–21, "Preparation of Specifications." The latter noted as a deficiency in the form specifications set forth in *Naval Courts and Boards, 1937,* the failure to include the "jurisdictional allegation" that the accused was attached to the command of the authority convening either a deck or summary court, predecessors of the current summary and special courts, respectively. Article 26, *Articles for the Government of the Navy,* limited a commanding officer's power to convene deck or summary courts to personnel attached to his command. The "attachment allegation," independently significant in order to show the jurisdictional authority of the convening authority over the person of the accused within the context of command relationship, was a required part of the pleading. The absence of specifying such requirement as to the matter of pleading "on active duty" leads ineluctably to the conclusion that at no time was such averment considered jurisdictional in nature as a matter of pleading.

The nexus between *Naval Justice,* the 1951 *Manual,* and the present *Manual* in the application, as well as the legal effect, of pleading "on active duty" is found in the consistent selection of the word "should" to modify the pleading action suggested. The pertinent portion of Appendix 6a, MCM at A6–a4, reads:

> A person on active duty belonging to a reserve component of the Navy, Marine Corps, or Coast Guard *should* be described as such . . . " (emphasis added).

The precatory nature of the quoted admonition is patent. The primary word is "should," a word usually understood as indicating guidance, not command. *United States v. Voorhees,* 4 U.S.C.M.A. 509, 16 C.M.R. 83 (1954). Had the practice of pleading active duty status obtained the legal significance pressed by appellant, that

is, an averment necessary, as a matter of pleading, to a jurisdictionally sufficient specification, language far more positive in meaning would have been selected to convey such a preference in interpretation.

From this background we are led to conclude that, what started out as "Justice School" law was thereafter adopted and has since survived to this date as a preferred, but not mandatory, pleading practice. Furthermore, it is sufficiently clear that the purpose of the rule, if one in fact existed at the time first fashioned, was to add clarity to, not to engraft a jurisdictional dimension upon, the pleading. In short, the phrase "on active duty" is not a sustentacular clause, the omission of which renders the specification defective as a matter of pleading. As the appellant has not been prejudiced and the purpose of the procedure has not been frustrated by omission of the aforementioned phrase, the relief prayed for must be denied.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Senior Judge ABERNATHY and Judge KERCHEVAL concur.