UNITED STATES, Appellee

v

BENJAMIN JENKINS, also known as BENJAMIN JENKINS
WEBB, Private E–2, U. S. Army, Appellant

7 USCMA 261, 22 CMR 51

———

No. 8268

Decided August 17, 1956

*First Lieutenant William H. Carpenter* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*First Lieutenant Robert L. Taylor* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant James G. Duffy.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by general court-martial of fraudulent enlistment, a purported violation of Article 83, Uniform Code of Military Justice, 50 USC § 677, and larceny of a wristwatch, a violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to a dishonorable discharge, total forfeitures, and confinement for eighteen months. The convening authority and a board of review in the Army Judge Advocate General's office approved the findings and sentence. We granted review on the question as to whether an entry into the service by induction is included within the provisions of Article 83 of the Code.

The evidence establishes that under the name of Benjamin Webb, during May 1954, the accused received an undesirable discharge from the Army. He was thereafter inducted into the Army as Benjamin Jenkins. Upon reporting for induction the accused failed to give notice of his prior service and undesirable discharge. A sergeant from his old Army unit recognized him and a check of his fingerprints revealed his true identity.

A statute must necessarily be interpreted in accordance with the announced intention of the legislature. ■ If the words used in the statute are precise and convey a definite understanding a court should not cast about for a different meaning. United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Cooper Corporation, 312 US 600, 61 S Ct 742, 85 L ed 1071; Hassett v Welch, 303 US 303, 58 S Ct 559, 82 L ed 858. In 50 Am Jur, Statutes, § 225, page 207, a generally accepted rule is pronounced: "A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity." When we look to the clear intendment of Article 83, we are inevitably led to the conclusion that the Article does not include induction within its provisions.

Article 83 of the Code reads in part that any person who "procures his own enlistment or appointment ■ in the armed forces by ■ means of knowingly false representations or deliberate concealment" and receives pay and allowances thereunder shall be punished as a court-martial may direct. Paragraph 162, Manual for Courts-Martial, United States, 1951, in discussing Article 83, contains the statement that "The term enlistment includes induction or any other means of entry into service in an armed force." If possible, provisions of the Code and the Manual will be reconciled; however, if the Manual in an authorized area conflicts with the Code, the latter must prevail. United States v Lucas, 1 USCMA 19, 1 CMR 19, and United States v LaGrange, 1 USCMA 342, 3 CMR 76. The power to prescribe rules provided for in the Manual is derived from Article 36 of

the Code, 50 USC § 611, which declares that the President may prescribe procedure, including modes of proof, provided that in this limited field nothing promulgated by the Manual shall be contrary or inconsistent with the Code. Modes of proof, as referred to by Article 36, according to the legislative history of the Act, mean only rules of evidence. See Hearings before the House Committee on Armed Services, 81st Congress, 1st Session, on HR 2498, page 1016 et seq. It follows, therefore, that if Congress did not include inductees within the provisions of Article 83, the Manual interpretation cannot enlarge the scope of the Article and bring people within its provisions never contemplated by Congress. Such an enlargement could hardly be considered a procedural matter or a mode of proof, but would be more in the nature of a substantive rule of law. Maurizi v Western Coal and Mining Company, 321 Mo 378, 11 SW2d 268; King v Shumacher, 32 Cal App2d 172, 89 P2d 466, cert den 1939, 308 US 593, 60 S Ct 123, 84 L ed 496.

The Manual definition, which the Government argues includes induction under Article 83, appears ■ to be a stranger to the military. No such definition appears either in the 1928 or 1949 Manual for Courts-Martial, U. S. Army, with respect to Article of War 54—the former fraudulent enlistment provision. Historically, the military has always treated the term "enlistment" as meaning the voluntary entering into a contract of enlistment. Colonel Winthrop, Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 538, recites "Enlistment is a voluntary contract for military service for a certain term entered into by a civil person with the United States." Civilian authorities have also subscribed to the same understanding of the word. The court in Franke v Murray, 248 Fed 865, 868, 869 (CA 8th Cir) (1918), commented:

"It is also claimed that the time when he became a soldier, within the meaning of the law, is regulated by article 109 of the Articles of War. But that article only refers to voluntary enlistments. It reads, 'At the time of his enlistment every soldier shall take the following oath or affirmation,' and then follows the form of the oath. But as the petitioner did not enlist, but was drafted under the Selective Draft Act, this article does not apply." [See also Babbitt v United States, 16 Ct Cl 202, affirmed 17 Ct Cl 431, 104 US 767, 26 L ed 921 (1882).]

A study of the Hearings on the Code discloses that the only pertinent changes in Article 83 from the 54th Article of War was addition of the words "or appointment" in order to make the Article "applicable to officers as well as enlisted persons." See Hearings before the House Committee, supra, page 1225; also United States v Taylor, 4 USCMA 232, 15 CMR 232. Article of War 54 was clearly directed toward the person "who shall procure himself to be enlisted in the military service" and not toward inductees. That fact is permanently fixed when we turn to the authorities who operated under Article of War 54. The Judge Advocate General of the Army in an opinion delivered in 1942 made a definite pronouncement that a draftee did not come within the terms of Article of War 54. In answer to a question as to whether or not a person who falsified his Selective Service questionnaire could be prosecuted under Article of War 54, The Judge Advocate General replied:

"Subsection 3(a) of the Selective Training and Service Act of 1940 provides for the 'induction' of certain selected men into the land or naval forces of the United States for training and service. The first proviso of the second sentence of that subsection provides that any person, with certain exceptions not here material, 'shall be afforded an opportunity to *volunteer for induction* into the land or naval forces of the United States for the training and service prescribed in subsection (b), . . .' (Underscoring supplied). Subsection 3(b) provides, in part, that 'Each man inducted under the provisions of subsection (a) shall serve for a training and service period of twelve consecutive months, . . .', subject to extension in the interests of national

defense. It must be presumed that Congress used the word 'inducted' rather than 'enlisted' advisedly, and thus that Congress intended that inductees would be assimilated or absorbed into the land or naval forces of the United States for training and service. The view that Congress intended to distinguish between 'induction' and 'enlistment' in this respect is supported by the fact that Congress expressly enacted in subsection 14 (c) of the act that—

" 'Nothing contained in this act shall be construed to repeal, amend, or suspend the laws now in force authorizing *voluntary enlistment* or reenlistment in the land and naval forces of the United States, including the reserve components thereof.' (Italics supplied)

". . . Therefore, with due regard for the penal nature of Article of War 54 and the exact language used therein, this office is of the opinion that a soldier inducted into the land forces of the United States, whether or not he 'volunteer[ed] for induction', pursuant to the Selective Training and Service Act of 1940, as amended, does not 'procure himself to be enlisted in the military service of the United States' within the meaning of that article. . . .

. . . . .

"In brief your question is answered: No." [JAGA 1942/244, January 23, 1942.]

A close look at the language used by the drafters of Article 83 reinforces our belief that Congress did not have draftees in mind when the Article was written. The important word in the phrase "Any person who . . . procures his own enlistment or appointment" is "enlistment." A dictionary of United States Army terms, SR 320–5–1, 1953, defines "enlistment" as a "voluntary enrollment as a member of the Army, as contrasted with induction under the draft or Selective Service" and a "period of military service under the contract of enlistment." These defini-

tions spell out the common meaning of the word which is that "enlistment" could either mean the active enrollment in the service or the term of service covered by the enlistment contract. Obviously Congress had the former meaning in mind when Article 83 was drafted. The act was directed toward those who procure, contrive, effect, or cause their own entry or enlistment into the armed forces, and was designed to keep out undesirables who come seeking shelter in the armed forces. The draft, on the other hand, is a dragnet which brings in the individual—in many instances unwillingly.

Examination of other portions of the Act of May 5, 1950, with respect to the use of the word "enlistment" leads to the discovery that at least on two occasions the word is used to describe the act of entrance into the service. Article 84 asserts, "Any person subject to this code who effects an enlistment or appointment in or a separation from the armed forces . . . shall be punished as a court-martial may direct" and Part XI, b, Section 8, of the Act as set forth in the Manual for Courts-Martial, supra, declares that "Every person who is enlisted in any armed force shall take the following oath or affirmation at the time of his enlistment."

It would have been a simple matter—had the drafters of Article 83 been so minded—to have worded that Article to include inducted persons. Congress expressly failed to utilize such language and we cannot, in view of the clear wording of the statute, effect a different meaning from the Article. We therefore hold that Article 83 does not include inductees. The board of review decision with respect to the fraudulent enlistment charge is reversed and the charge dismissed. The record is returned to The Judge Advocate General of the Army for referral to a board of review for reconsideration of the sentence.

Chief Judge QUINN and Judge LATIMER concur.