UNITED STATES, Appellee,

v.

David R. ANDERSON, Lance Corporal, U. S. Marine Corps, Appellant.

No. 39,604.

NCM 79 1931.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Commander Walter J. Landen, Sr.*, JAGC, USN (argued); *Lieutenant Judith S. Robinson*, JAGC, USNR.

For Appellee: *Lieutenant Commander Michael R. McGuire*, JAGC, USN (argued); *Commander T. C. Watson, Jr.*, JAGC, USN (on brief).

Opinion

FLETCHER, Judge:

Before the United States Navy Court of Military Review, appellant [1] pointed out, as an assignment of error, that the certified record of trial contained the following erroneous instruction by the military judge:

Gentlemen, counsel will now present arguments on the sentence. I want to caution you that arguments do constitute evidence in this in this [sic] case. They are presented in an effort to assist you in determining a fair, just and appropriate sentence in this case.

This obvious instructional error was previously authenticated by the military judge

1. Tried by general court-martial with members, appellant was found guilty, in accordance with his pleas, of one violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881, and one violation of Article 118, UCMJ, 10 U.S.C. § 918. He was sentenced to a reduction to the grade of E–1, total forfeitures, confinement at hard labor for 10 years, and a dishonorable discharge. Pursuant to a pretrial agreement, the convening authority approved the sentence, and suspended the confinement exceeding 8 years. The intermediate court affirmed the findings as approved by the convening authority.

and not commented on either by the convening authority, or by his staff judge advocate, pursuant to his review under Article 61, Uniform Code of Military Justice, 10 U.S.C. § 861.

Appellee reacted to this assignment of error by filing a motion with the Court of Military Review to attach a Certificate of Correction to the record of trial in order to show "that the military judge properly advised the members that the arguments of counsel on sentencing did 'not' constitute evidence." Three days later appellant filed a motion for discovery, requesting the Government to make available for review the electronic recordings and stenographic notes from which the authenticated record of trial was prepared. This motion was denied, as was a subsequent request for reconsideration of the denial. Finally, appellant filed a motion for an order to issue from the Court of Military Review "restraining agents of the United States from destroying . . . [the] materials used in the preparation of the record of" appellant's general court-martial. This motion was also denied.

■ We granted review (10 M.J. 94 C.M.R.) in this case to examine whether the United States Navy Court of Military Review erred in failing to provide appellant with "an opportunity to examine the materials upon which" the transcript of the erroneous instruction was based—before the intermediate court accepted a certificate of correction. After a close examination of the circumstances presented here, we conclude that it was error to fail to provide a hearing wherein the basis of substantive trial transcript changes was exposed with notice and opportunity for all parties to be heard.

It must be noted at the outset that this case involves a transcription of instructions by the trial judge, as quoted above, which, read on their face, contain not only an erroneous grammatical defect, but as the words stand, a patently erroneous announcement of the legal effect of arguments of counsel. Notwithstanding this careless performance of reporting duties,

even the military judge certified the correctness of the transcript. Nor was this obvious error observed or commented on by the staff judge advocate in performance of his Article 61 review. Apparently, the erroneous transcript would have remained undetected had it not been for the assiduous record examination performed by the appellate defense counsel who raised the defect before the intermediate court. The events leading to the correction of this transcript were a direct result of this defense appellate advocate's insistence that a true, complete, and accurate record be provided.

While we look without favor on the inaccurate initial authentication of the military judge under paragraph 82, Manual for Courts-Martial, United States, 1969 (Revised edition), we have recognized the validity of a Certificate of Correction where there is no showing of fraud or mistake. *United States v. Wilkerson*, 1 M.J. 56 (C.M. A.1975); *United States v. Carey*, 23 U.S.C. M.A. 315, 49 C.M.R. 605 (1975); *United States v. Napier*, 20 U.S.C.M.A. 422, 43 C.M.R. 262 (1971). These precedents, however, forecast a question which we are now compelled to conclusively answer: How can the appellate defense counsel adequately appraise himself of the presence of fraud or mistake, so as to properly raise it, absent the opportunity to examine the materials on which a correction of the record is based and to be heard on the issue of the effect of those materials?

It was this very problem that we attempted to avert in our strong recommendation of reference to ABA Standards, The Function of the Trial Judge § 2.5 (1972) found in *United States v. Wilkerson, supra* at 57 n.1. This standard, set forth in full, is as follows:

2.5 Judge's duty concerning record of judicial proceedings.

The trial judge has a duty to see that the reporter makes a true, complete and accurate record of all proceedings. He should at all times respect the professional independence of the reporter, but may challenge the accuracy of the reporter's record of the proceedings. The trial

judge should not change the transcript without notice to the prosecution, the defense and the reporter, with opportunity to be heard. The trial judge should take steps to insure that the reporter's obligation to furnish transcripts of court proceedings is promptly met.

The lack of care in failing to initially insure an accurate transcript or in failing to resolve errors at an earlier point in the proceedings can not be excused. This frequent failure challenges confidence in the accuracy of authenticating officials and thus the system, resulting in unnecessary expenditure of time and money assuring the preservation of justice in the military. We suggest that this can be simply obviated if, prior to authentication, the military judge provides an opportunity for both counsel to examine the transcript.

■ In accordance with the recommendation given in footnote 1 of *United States v. Wilkerson, supra,* we now prospectively hold that when, after authentication, it becomes necessary for the trial judge to propose substantive changes in the record of trial to accurately reflect the proceedings in the case, pursuant to a Certificate of Correction, he should give notice to all parties, providing an opportunity to be heard[2] on the issues of the proposed correction. ABA Standards, The Function of the Trial Judge § 2.5 (1972); *United States v. Wilkerson, supra.* At such a hearing the basis of the correction of the record may be fully exposed.

In the instant case, appellant was entitled to such a hearing prior to the intermediate court's acceptance of the Certificate of Correction. This accused pleaded guilty and was properly so found by the military judge. The contested correction related to instructions of the court members on sentence. We rule that the lower court erred in disallowing him the opportunity to discover the basis of the transcript change prior to acceptance of the Certificate of Correction.

---

**2.** The formal nature of such a hearing should be efficiently related to the importance of the proposed transcript corrections.

The decision of the United States Navy Court of Military Review as to sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy for submission to the intermediate court for further proceedings in light of this opinion.

EVERETT, Chief Judge (concurring in the result):

"The trial counsel of a general or special court-martial ... shall, under the direction of the court, prepare the record of the proceedings," Article 38(a), Uniform Code of Military Justice, 10 U.S.C. § 838(a); for trials by general court-martial or by a special court-martial which adjudges a bad-conduct discharge, the military judge is entrusted with authentication of the record. Article 54, UCMJ, 10 U.S.C. § 854; para. 83 a, Manual for Courts-Martial, United States, 1969 (Revised edition).[1] Consistent with his responsibility for preparing the record, the trial counsel must initially examine the record after it has been transcribed by the court reporter; until the record has been authenticated, he can make minor changes and direct the reporter to make major corrections. Para. 82e, Manual, *supra.*

Defense counsel, too, has a role in the preparation of the record. Article 38(c), UCMJ, 10 U.S.C. § 838(c), makes reference to it in these terms (emphasis added):

> In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, *including any objection to the contents of the record* which he considers appropriate.

That role is more specifically discussed in paragraph 82e of the Manual:

> When undue delay will not result, the trial counsel should permit the defense

---

**1.** Alternative provisions are made for authentication if the judge is dead, disabled or absent. *See* Article 54, Uniform Code of Military Justice, 10 U.S.C. § 854.

counsel to examine the record before it is forwarded to the convening authority. A suitable notation that this examination has been accomplished by the defense counsel should be included in the record, preferably on the page bearing the authentication. *See* appendix 9*c* for form. If the defense counsel discovers errors or omissions in the record, he should suggest to the trial counsel appropriate changes to make the record show the true proceedings. If the trial counsel does not concur with the defense counsel as to a suggested change, or if the record has already been authenticated, the trial counsel should bring the suggestions to the attention of those who authenticated the record.

It appears consistent with this language that the defense counsel may examine the record either before or after authentication; probably this flexibility was allowed to deal with the varying circumstances that might affect the respective availabilities of the defense counsel to examine the record and the military judge to authenticate it. "[A]s soon as the record is authenticated," a copy must be delivered to the accused. Para. 82 *g*, Manual, *supra*. *See* Article 54(c). At that stage, if he has not already had an opportunity to examine the record, the defense counsel presumably can obtain a copy from the accused for inspection. In any event, both the Code and the Manual seem to contemplate that the defense counsel receive an opportunity to bring possible errors and omissions in the record to the attention of those who authenticate and review the record. *See United States v. Cruz*, 5 M.J. 286, 288 (C.M.A.1978).

Of course, as the principal opinion suggests, the most orderly way to proceed would be for trial counsel initially to examine and correct the record; then deliver it to the defense counsel for his examination and suggestion of any errors; only after that has occurred, transmit it to the military judge for authentication. However, since the defense counsel may not be readily available at the installation where the record is being prepared, this scenario will not always be feasible or might result in "undue delay." *See* para. 82*e*, Manual, *supra*. Also, just as in the case at hand, a possible error in the record may be overlooked in the first instance by the trial defense counsel and by the military judge.

As the principal opinion observes, the American Bar Association Standards contemplate that a defense counsel will have some opportunity to be heard on proposed correction of errors or omissions in the record. *See United States v. Wilkerson*, 1 M.J. 56, 57 n.1 (C.M.A.1975). However, not only these Standards but also basic rights to due process are involved. The possibility that an error may occur in transcribing the events of trial—as probably happened in the case at hand—is great enough for due process to require that a defense counsel be afforded some opportunity to call attention to what he believes may have been an erroneous transcription. Moreover, once a record has been authenticated by the military judge—and so is to be presumed regular and correct—an *ex parte* change in that record cannot appropriately be made without at least giving the defense an opportunity to be heard thereon. Of course, the nature and scope of the change will affect the type of hearing that is required; probably in many instances an adequate hearing can be provided by allowing the respective parties to present affidavits and other documentary evidence for consideration by the authenticating judge.[2]

2.  A conference telephone call among the judge, trial and defense counsel, and perhaps the court reporter may be another means to provide an adequate hearing. A defendant has a right to be present at his criminal trial, but he has no right to be present at the appeal of his conviction. *See, e. g., Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); *Dowdell v. United States*, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911); *Schwab v. Berggren*, 143 U.S. 442, 12 S.Ct. 525, 36 L.Ed. 218 (1892). Likewise, he need not be present for a hearing on a certificate of correction. *Cf. Dowdell v. United States, supra*. Moreover, such a hearing should be molded to fit the type of issue to be considered and the circumstances under which that issue arises.

In the present case, a Certificate of Correction was authenticated by the military judge—presumably at the request of appellate government counsel—without any notice to appellant or his counsel that a correction was proposed and then was filed with, and accepted by, the Court of Military Review. Such a procedure was inconsistent with Fifth Amendment due process rights and also, in my view, transgressed the obvious intent of the Manual that a defense counsel have some reasonable opportunity to be heard concerning errors or omissions in the record (para. 82e, Manual, *supra* ); the certificate remains open to attack because of these procedural defects. As the principal opinion makes clear, the error was compounded subsequently by the refusal of the Court of Military Review to grant appellant's motion for discovery of the court reporter's notes and tapes.

In many instances, an error in transcription of proceedings will concern the testimony of witnesses, the argument of counsel, or other events which the military judge observed. In the present instance, the error concerns the accuracy of his instructions. Perhaps a judge has a special reason to want a record of trial modified so that it will recite that he gave correct advice and made correct rulings, rather than the contrary. Any such interest does not of itself preclude him from considering fairly and objectively a correction of the record suggested by others or from proposing a correction on his own initiative. But, regardless of who proposes a correction or what it concerns, the judge must allow the defense counsel, as the representative of the accused, a reasonable opportunity to know that a correction is being considered and an opportunity to contest the correction

with supporting affidavits or other appropriate evidence if the defense counsel so chooses.[3] Moreover, upon timely request by a defense counsel, either the judge or other reviewing authorities should take whatever action may be reasonably necessary to assure a defense counsel reasonable access to a reporter's notes or tapes.[4] In a situation where the military judge is not reasonably available to provide a hearing on a proposed correction, the Court of Military Review— which has fact-finding powers—can serve as the forum for considering the correction.

According to the dissent, it now has been made clear that the record was erroneously transcribed; so it should be corrected to include the word "not" at the appropriate point in the judge's instructions to the court members. However, the documents in the record before us do not adequately reflect that the existence of an omission in the record has been established; appellate defense counsel—as I understood the oral argument and documents filed subsequent thereto—do not concede this point. Therefore, the Court of Military Review must provide an opportunity for appellant to be heard—either before it or before the trial judge—so that counsel for appellant can contest the proposed correction if he chooses to do so.[5]

Finally, I shall reiterate here the concern that I expressed during the oral argument. Apparently, the reporter's notes and tapes still exist at the place of trial and would reveal conclusively whether the judge used the word "not" in his instructions. Counsel for the parties should have been able to devise some mutually satisfactory, informal procedure whereby they could have ascertained what the judge said without the necessity for the various pleadings and the

---

**3.** Normally the trial defense counsel should be notified of the proposed change; but if the case has reached the Court of Military Review or our Court, appellate defense counsel should be notified. I foresee few occasions when a witness' live testimony will be necessary in determining whether a correction should be made.

**4.** The original notes and tapes relating to a record of trial should be retained until appellate review of the case has been completed, since—

as here—even after the action of the convening authority, some question may arise as to the accuracy of the record of trial.

**5.** If the tapes are made available to appellate defense counsel or to his authorized representative at the situs of the trial and reveal that an omission occurred in the record, I presume that the defense would perceive no reason for such a contest.

extensive oral argument in this Court. Hopefully, in the future, any similar issue will be resolved without the occasion for an accused to seek review thereof in our Court.

COOK, Judge (dissenting):

The majority propose to overrule 30 years of military practice based on a concept that is not applicable to military law, in a case where the basic factual issue has been mooted, with a procedure which may only exacerbate the problem.

In *United States v. Galloway*, 2 U.S.C.M.A. 433, 9 C.M.R. 63 (1953), this Court enunciated the rule that correction of the record of trial by the parties having the responsibility to authenticate the record would be conclusive in the absence of a charge that the correction deliberately and intentionally falsified the record. In that case, the record, as prepared by the court reporter, did not contain instructions by the law officer on the presumption of innocence, reasonable doubt, or the burden of proof. After authentication, the president of the court-martial, as well as the trial counsel, executed a certificate of correction indicating that the required instructions had been given at trial and that their omission from the record of trial was error. Upon receipt of a copy of the certificate of correction, defense counsel stated that he would not consent or agree to the correction and that he contested the accuracy of the certificate. In addition, he submitted an affidavit from the court reporter declaring that, to the best of her knowledge and belief, her stenotyped notes contained an accurate, complete record of the court's proceedings and that the instructions reported in the certificate of correction did not appear in her notes. In sustaining the conclusiveness of the correction of the record, this Court declared:

Consequently, we declare that the determination of a factual question relating to

the contents of a certificate of correction is solely the responsibility of those individuals required to authenticate records of trial and certificates of correction, namely, the president of the court and the law officer. Upon review, this determination will be regarded as conclusive in the absence of a charge that it has been deliberately and intentionally falsified.

2 U.S.C.M.A. at 436, 9 C.M.R. at 66.[1] This rationale has been followed by this Court, and the Boards of Review and Courts of Military Review of the armed forces. *See United States v. Napier*, 20 U.S.C.M.A. 422, 43 C.M.R. 262 (1971); *United States v. Vintress*, 17 U.S.C.M.A. 258, 38 C.M.R. 56 (1967); *United States v. Albright*, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958); *United States v. Brown*, 47 C.M.R. 522 (N.C.M.R. 1973); *United States v. Hanlon*, 47 C.M.R. 206 (N.C.M.R.1973); *United States v. Wright*, 40 C.M.R. 895 (A.C.M.R.1969), *rev'd. on other grounds*, 20 U.S.C.M.A. 12, 42 C.M.R. 204 (1970); *United States v. McCoy*, 43 C.M.R. 918 (A.F.C.M.R.1970); *United States v. Ratajczak*, 43 C.M.R. 1007 (A.F.C.M.R.1971), *pet. denied*, 21 U.S.C.M.A. 598, 43 C.M.R. 413 (1971). We have held that correction of the record may properly be made after authentication and during the process of appellate review. *United States v. McLaughlin*, 18 U.S.C.M.A. 61, 39 C.M.R. 61 (1968).

However, in *United States v. Wilkerson*, 1 M.J. 56, 57 n. 1 (C.M.A.1975), in a footnote granting the government's motion for leave to file a certificate of correction, this Court stated:

[w]e did so only after assuring ourselves, . . . that neither the appellant nor his counsel desired to make any allegation of fraud with respect to the substance of the certificate.

The footnote also strongly recommended adoption of the ABA Standards, The Function of the Trial Judge § 2.5 (1972).[2] I do

---

1. In the absence of the law officer (now military judge) and president, a certificate of correction, signed by two members of the court, has been permitted. *United States v. Snook*, 12 U.S.C.M.A. 613, 31 C.M.R. 199 (1962).

2. ABA Standards, The Function of the Trial Judge § 2.5 (1972), reads:

The trial judge has a duty to see that the reporter makes a true, complete and accurate

not believe that this standard should be adopted, without restriction, into the military justice system. The distinction between civilian and military practice is recognized by the "Comparative Analysis of the American Bar Association Standards for the Administration of Criminal Justice and Military Practice and Procedure" (1978), which, in referring to Section 2.5, states:

> Inconsistent with the Standard.
>
> Contrary to civilian practice, the military judge must authenticate the record of trial. Only in the event of his death, disability or absence is substitute authentication permitted (paragraph 82*f*, MCM, 1969 (Rev.)). Therefore, the judge is ultimately responsible for the accuracy of the record (*United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 51 C.M.R. 723 [1 M.J. 429] (1976).
>
> The trial counsel and defense counsel both examine the record and can challenge its accuracy (paragraph 82*e*, MCM, 1969 (Rev.)).

In the military, as contrasted to the civilian practice, the trial judge is responsible for the authentication of the record.[3] Para-

graph 86*c* of the Manual for Courts-Martial, United States, 1969 (Revised edition), provides that where a record of trial "upon review has been found to be incomplete or defective in some material respect" and it is further found that the court correctly performed its function, "but through clerical error or inadvertence the events" had been improperly recorded, the record "may be returned to the military judge" for a certificate of correction to relate the true facts. The Manual also provides, in paragraph 82*e*, that the trial counsel has the responsibility, prior to authentication of the record, to "examine it carefully for errors or omissions" and make such corrections as are necessary to show the true proceedings. Defense counsel should also be permitted "to examine the record" and he, too, may "suggest to the trial counsel appropriate changes," where necessary, "to make the record show the true proceedings." Thus, both trial and defense counsel are responsible for the accurate preparation of the record prior to submission to the military judge.

In civilian practice, the record of trial is certified by the court reporter,[4] but, even

record of all proceedings. He should at all times respect the professional independence of the reporter, but may challenge the accuracy of the reporter's record of the proceedings. The trial judge should not change the transcript without notice to the prosecution, the defense and the reporter, with opportunity to be heard. The trial judge should take steps to insure that the reporter's obligation to furnish transcripts of court proceedings is promptly met.

The Commentary accompanying this section states:

> Where reporters are employed, their independence must be both apparent and genuine. The trial judge has the same right as the other participants in the trial to challenge the accuracy of the record.

*Id.* at 40.

It is clear that in civilian practice the trial judge is merely one party involved in correcting the record, in contrast to the military practice where he is the sole party responsible for authentication of the record, *see* Article 54(a), Uniform Code of Military Justice, 10 U.S.C. § 854(a); para. 82*f*, Manual for Courts-Martial, United States, 1969 (Revised edition), and correction of the record where it appears to be incomplete or defective, *see* para. 86*c*, Manual,

*supra.* Thus, the responsibility shared in the civilian practice is solely placed on the military judge by the Manual. This fact is important when considering the procedure proposed by the lead opinion. *See* n. 4, *infra.*

3. Article 54(a), *supra.* Only in the rare situation of trial by judge alone where both the military judge and the trial counsel are not available to authenticate the record by reason of "death, disability or absence" may the court reporter authenticate the record of trial. Para. 82*f*, Manual, *supra.*

4. *Cf.* D.C. Superior Court Rule CRIM 36–I (Feb. 6, 1974):

> (c) ENDORSEMENT ON TRANSCRIPT. Each transcript obtained in accordance with this rule shall bear the following endorsement upon its cover page: . . .
>
> "This transcript represents the product of an official reporter, engaged by the court, who has personally certified that it represents his or her original notes and records of testimony and proceedings of the case as recorded."
>
> (d) TRANSCRIPT ON APPEAL. Upon the completion of any transcript in a matter to be brought before the appellate court the report-

there, clerical errors arising from oversight or omissions may be corrected by the trial court. *See* Fed.R.Crim.P. 36 and Fed.R. Civ.P. 60.

In a civilian environment, where all parties to a trial commonly reside near the situs of the trial court, it is practical to allow some form of hearing prior to correction of a substantial portion of the record.[5] However, in the military community, where the trial participants may have been together for only a brief period at some far-off location, at some long-past time, the impracticalities of requiring that they be brought together for a formal hearing before a correction to the record of trial can be made are obvious.

Since the President has been granted the power to prescribe "[p]retrial, trial, and post-trial procedures ... for cases ... triable in courts-martial," I believe the Manual provisions are to be followed by this Court unless they are contrary to the United States Constitution *or* the Uniform Code of Military Justice. Article 36(a), Uniform Code of Military Justice, 10 U.S.C. § 836(a). *See United States v. Hawkins*, 2 M.J. 23 (C.M.A.1976); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967); *United States v. Jenkins*, 7 U.S.C.M.A. 261, 22 C.M.R. 51 (1956); *United States v. Villasenor*, 6 U.S.C.M.A. 3, 19 C.M.R. 129 (1955); *United States v. LaGrange*, 1 U.S.C.M.A. 342, 3 C.M.R. 76 (1952); *United States v. Lucas*, 1 U.S.C.M.A. 19, 1 C.M.R. 19 (1951).

Where, as here, the Manual has defined the procedure to correct the record, this Court should not create a new method even when based on an American Bar Association standard.

I agree with the majority's pronouncements concerning the responsibility of the trial participants to initially ensure an accurate transcript, and I strongly urge that more care be exercised to achieve this necessary and proper result. *See United States v. Carey*, 23 U.S.C.M.A. 315, 49 C.M.R. 605 (1975). It is particularly disturbing where, as here, the omission escaped the notice of the reporter, both counsel, the military judge and the staff judge advocate. However, I believe that the procedure dictated by the majority is too drastic and will impose too great a burden on the military services to achieve the ideal goal of an authenticated accurate record for appellate review, *United States v. Cruz-Rijos*, 1 M.J. 429 (C.M.A.1976), and, therefore, I disagree with the lead opinion herein (12 M.J. 195, 197).

that when, after authentication, it becomes necessary for the trial judge to propose substantive changes in the record of trial to accurately reflect the true proceedings in the case, pursuant to a Certificate of Correction, he should give notice to all parties, providing opportunity to be heard on the issues of the proposed correction.[6]

---

er shall notify the trial court and counsel that the transcript has been completed and will be forwarded to the Court of Appeals 5 days hence. The said notice shall inform counsel that any objections to the transcript must within the said 5 days be presented to the trial court and served on opposing counsel in the manner prescribed in SCR CIV 5. Objections raised by the Court *sua sponte* shall be made known to the parties who shall be given an opportunity to make appropriate representations to the Court before the objections are resolved. All objections shall be resolved by the trial court on the basis of the best available evidence as to what actually occurred in the proceedings.

*See* ABA Standards Relating to Trial Courts, § 2.42 (1976):

Court reporters should be responsible to the court rather than to individual judges. They should have professional independence in regard to the accuracy of their reporting and transcription but the court should have ownership and control of their record of court proceedings.

5. Both Fed.R.Crim.P. 36 and Fed.R.Civ.P. 60 provide only for "such notice, if any, as the court orders." The trial court has the duty and power to correct errors in the stenographer's notes of the sentencing proceedings. *United States v. Vecchiarello*, 536 F.2d 420 (D.C.Cir. 1976). The power to correct the record exists apart from this Rule. *Kennedy v. Reid*, 249 F.2d 492 (D.C.Cir.1957); *Downey v. United States*, 91 F.2d 223 (D.C.Cir.1937).

6. Notice of the correction of the record is provided by the requirement that a copy of the certificate of correction be served on the ac-

The lead opinion fails to define what is required in a "formal" hearing: Is a verbatim transcript to be made; is the proceeding adversary in nature; must the accused attend; is sworn testimony required; must the judge give testimony as to his recollection; are the reporter's notes of the original trial to become an exhibit to the record of this hearing? Further, a full-fledged, formal hearing which includes all the trial participants might well result in disagreement between the participants as to what actually transpired during the trial, such as occurred in *United States v. Galloway, supra.* Since such disagreement ultimately would have to be resolved, the lead opinion fails to indicate who should be empowered to make such a resolution. This Court's decisions have consistently placed that power in the person having the responsibility for authenticating the record, and I perceive no compelling reason to substitute another procedure.[7]

Trial here was held in Okinawa. After receipt of his copy of the certificate of correction, appellate defense counsel moved that the Government make available for review the electronic and magnetic recordings and stenographic notes from which the record of trial had been prepared. This motion was denied by the United States Navy Court of Military Review. Subsequent to that denial, a message was received by the Navy-Marine Corps Trial Judiciary Activity from Navy-Marine Corps Trial Judiciary Okinawa which stated that both the stenographic notes and magnetic tapes verify the accuracy of the military

judge's certificate of correction. This information apparently was not transmitted to appellate defense counsel. Thus, whatever problems may have resulted from the Navy court's refusal to grant defense counsel access to the court reporter's materials, the underlying factual conflict here appears to have been resolved. What now remains is the propriety of the refusal of the Navy Court of Military Review to enforce defense counsel's request to examine the court reporter's notes.[8]

I do agree that defense counsel should be accorded reasonable access to the reporter's notes and tapes.[9] *See United States v. Averett,* 3 M.J. 201, 202 (C.M.A.1977). In my opinion, it is sufficient for this Court to hold that, upon notification of the filing of a certificate of correction of a record of trial which occurs after authentication of the record and while the case is in the process of appellate review, defense counsel, if he chooses to challenge the accuracy of the correction, will be permitted to examine the court reporter's notes and other materials from which the record of trial was prepared, and to secure the court reporter's assistance in determining whether those notes and other materials verify the accuracy of the correction as submitted.

I do not agree that the decision of the Navy Court of Military Review as to sentence should be reversed. The purported error apparently has been found not to exist. What is really being addressed is the refusal of the Navy Court of Military Review to permit the defense counsel to examine the reporter's notes and tapes. This

---

cused and that his receipt therefor be attached to the other copies of the record of trial. Para. 86c, *Manual, supra.*

7. It might well be that where an open-mike tape recorder which recorded *all* of the trial proceedings was used, a different result might occur. Past cases deal with the situation where the trial proceedings are recorded through the intermediary of the human mind.

8. In the Government Reply to Appellant's Motion to File Supplemental Pleadings, p. 2, appellate government counsel acknowledge that there is a duty "to insure the availability of the tapes, when in existence, to the appellant or his agent."

9. The Air Force requires retention of the court reporter's notes or recordings until completion of appellate review. AFM 12–50, Table 111–1, page 10–374 (10 Oct. 1969). The Army has a similar provision for general courts-martial. AR 27–10, paragraph 2–6b (C–20, 15 Aug. 1980). The Navy only requires retention "until such time as the convening authority (in general courts-martial)" or the supervisory authority (special courts-martial) "takes action on the case." Manual of the Judge Advocate General of the Navy (JAGMAN) 0120a; but where a summarized record is prepared, retention is required "until completion of appellate review." JAGMAN 0120b.

error may be corrected by returning the record to the Navy Court of Military Review with instructions that the defense counsel or his agent be permitted such access. If counsel concurs in the certificate of correction, the Navy Court of Military Review may take final action on the record. If he still challenges the accuracy of the correction on the ground that it has been deliberately and intentionally falsified, the record should be returned to this Court for further action.